**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KATHY MATTHEWS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-1783 |
| | § | |
| CITY OF HOUSTON FIRE | § | |
| DEPARTMENT, DAVID SWAN, | § | |
| AND JACK WILLIAMS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION ON
## MOTION FOR SUMMARY JUDGMENT

This matter was referred by United States District Judge Lee H. Rosenthal, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #21). Defendants have filed a motion for summary judgment, under Rule 56(c) of the Federal Rules of Civil Procedure. (Defendant City of Houston's Amended Motion for Summary Judgment ["Defendants' Motion"], Docket Entry #40). Defendants ask for a judgment in their favor on Plaintiff's race, sex, age, and disability discrimination claims, as well as her state law claim for retaliation under the applicable workers' compensation statute. In response, pro se Plaintiff Kathy Matthews ["Plaintiff," "Matthews"] has provided various affidavits and "character declarations," and Defendants have replied. (Affidavit of Ivis Johnson, Docket Entry #39; Affidavits of Character Declaration, Docket Entry #41; Amended Affidavit of Charles Loving, Docket Entry #42; Defendant's Reply to Plaintiff's Response to Defendant's Amended Motion for Summary Judgment ["Defendants' Reply"], Docket Entry #48). After a review of the motion and responses, the evidence provided, and the applicable law, it is **RECOMMENDED** that Defendants' motion be **GRANTED**.

1

## BACKGROUND

This case arises out of Matthews' former employment with the City of Houston ("the City"). While the precise facts are difficult to glean, it appears that Plaintiff was first hired, in 1991, by the City's housing and community development office, although it is not clear from the record which position she held. (Deposition of Kathy Matthews ["Matthews Deposition"] 72:3-4, Docket Entry #40). In 2000, she was apparently promoted and transferred to the Finance and Administrative Division of the Houston Fire Department. (*Id*. 72:9-22). Matthews, an African-American woman in her forties, claims that, while working at the fire department, the City discriminated against her because of her race, sex, age, and disabilities. She is explicit in complaining that the City unlawfully assigned her to menial duties, excluded her from meetings, gave her poor work evaluations and unfair reprimands, and, ultimately, terminated her.

While employed with the fire department, Matthews was classified as a "Management Analyst II," a position she describes as "floating," and which required her to do "whatever they asked me to do to reorganize that department." (*Id*. 72:19-74:22). In that position, Plaintiff allegedly conducted research and reported on the department's budget and inventory. (*Id*.). Occasionally, Plaintiff's research required her to visit the department warehouse with other management analysts. (*Id*. 87:11-16). In addition to conducting research and working in the warehouse, Plaintiff testified that, unlike other employees, she was required to "clean up the file cabinets," and "put[] together cell phones." (Matthews Deposition 23:12-20; Transcript of September 24, 2008 Status Conference ["Conference Transcript"] 18:17-20, Docket Entry #51). She was also reportedly required to attend division meetings, as part of her job, but she complains that she was excluded from major budget and planning meetings. (Matthews Deposition 18:16-21). In making her claims, Matthews alleges

2

that she was forced to work in the warehouse, assigned "demeaning" duties, and was excluded from critical meetings on the basis of her race, sex, and age.

Matthews also complains, however, that she was discriminated against because of her physical impairments. While working at the City, Matthews was diagnosed with two physical ailments, which are allegedly relevant to her claims before this court. In October 2002, she was diagnosed as suffering from sleep apnea, which she claims caused her to "los[e] so many seconds of breathing" at night that she was at risk for strokes. (Matthews Deposition 80:3-23). She also claims that this condition made her apt to fall asleep during the work day. (*Id*.). Following this diagnosis, Matthews took medical leave, from October 2, 2002, until early December 2002, "out of fear for possibl[y] having a stroke." (Matthews Deposition 80:15-23). The following year, in May 2003, Matthews was diagnosed as suffering from carpal tunnel syndrome. (Matthews Deposition 95:4-6). She applied for workers' compensation because of that condition, but the Texas Workforce Commission denied her claim. (Matthews Deposition 51:22-52:4). In her present lawsuit, Matthews alleges that the Commission denied her claim because her supervisor, Defendant David Swan, falsely reported that the City did not receive timely notice of her injury.

Several of Matthews' other complaints also stem from her relationship with David Swan. On January 9, 2004, Swan issued a written reprimand to Matthews "for failure to comply with the City of Houston Fire Department Rules and Regulations." (Ex. 6 to Defendants' Motion). In that reprimand, Swan stated that he had "witnessed inappropriate behavior between a co-worker, Yolanda Johnson," and Matthews. (*Id*.). Allegedly, the women had raised their "voices at each other while . . . discussing a work related issue." Swan described Matthews' demeanor as "so aggressive that [Swan] had to repeatedly ask [her] to calm down." (*Id*.). Swan wrote that "[t]his is not the first

instance you have exhibited inappropriate behavior toward other employees, both in the work area and in meetings." (*Id*.). In the reprimand, Swan also referenced Matthews' low performance evaluations for "Interpersonal skills," and a separate incident three months earlier, in which Matthews' "behavior was so unprofessional that we had to stop the meeting, [and] spend a few minutes getting you to calm down." (*Id*.). Plaintiff was warned that "[t]his type of argumentative and accusatory behavior" could lead to "further disciplinary action up to and including" termination. (*Id*.). Plaintiff appealed the reprimand through the City's grievance process, and to the Office of the Inspector General. (Ex. 10 to Defendants' Motion). Both appeals were unsuccessful. (Ex. 8 to Defendants' Motion; Ex. 11 to Defendants' Motion).

Two months after the reprimand was sustained, Swan issued a performance evaluation for Matthews' work, from July 2003, through February 2004. (Ex. 9 to Defendants' Motion). Swan rated Plaintiff in 16 different areas, on a scale of one to five, in which one represented "unacceptable" performance, two represented "needs improvement," three represented "acceptable," four represented "strong," and five represented "outstanding" work. (*Id*.). Plaintiff did not receive a five in any category, and she received only two fours, one for "punctuality," and one for "safety awareness." (*Id*.). Plaintiff received an "unacceptable" rating for "communication" and "interpersonal skills." (*Id*.). Her overall score was 2.42, or "needs improvement." (*Id*.). In response to this evaluation, Plaintiff stated "I feel the evaluation rating is a deliberate form of harassment, retaliation and racial discrimination and indifferential[sic] treatment." (*Id*.). She appealed that evaluation to the Inspector General's Office, but it was affirmed. (Ex. 10 to Defendants' Motion; Ex. 11 to Defendants' Motion). Matthews now complains that the low evaluation was based on her race. (Conference Transcript 20:3-8).

4

While she pursued her appeals with the City, Plaintiff also filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), on April 1, 2004. (Ex. 1 to Defendants' Motion). On the EEOC form, Plaintiff marked "Race" and "Retaliation" as the bases for her complaint. (*Id*.). Matthews alleged that she "was subjected to different terms, conditions, and privileges of employment by being subjected to unwarranted strict scrutiny in my duties, harassed, issued poor performance evaluations, and issued written reprimands based on false statements." (*Id*.). She also claimed that "[]White co-workers in my Division are not subjected to similar acts of discrimination." (*Id*.). The EEOC issued Plaintiff a right-to-sue letter on March 24, 2005. (Ex. 2 to Defendants' Motion).

Shortly after Matthews filed her EEOC charge, the Texas Workforce Commission reversed its decision regarding her carpal tunnel injury, and awarded benefits retroactive to her original claim in 2003. (Matthews Deposition 52:18-25). Plaintiff took workers' compensation leave for the injury, although it is not clear, on this record, when that leave began. It does appear, however, that Matthews was on leave for most of 2005, because she did not return to work until November 15 of that year. (Ex. 20 to Defendants' Motion; Plaintiff's Complaint ¶10.7). In May 2006, five months after she returned to work, Plaintiff "requested an accommodation to heal from sleep apnea, hypertension, and a previous hand injury." (Matthews Deposition 57:13-16). On May 17, 2006, the City denied her request. (Ex. 22 to Defendants' Motion). In a letter from Defendant Jack Williams to Matthews, he wrote that her "doctor released you to full duty with no restrictions," and that "a request for time to heal contradicts the release to full duty." (*Id*.). Williams advised Matthews that "[i]f your condition is such that you are ill and cannot work, then you must take sick leave to allow yourself to heal." (*Id*.).

Matthews also claims that she requested a transfer to accommodate her sleep apnea. (Matthews Deposition 26:4-7). She alleges that Williams and Swan told her that "they were trying to move [her] to another department" to accommodate her condition, but they ultimately denied the request, stating, "Oh, by the way, you're a liability. What [are] we supposed to do if you have a stroke or something? You've got so much going on." (*Id*. 26:22-27:17).

Less than one month after the City denied Plaintiff's request for "accommodations," Swan issued a performance evaluation for Matthews' work from February through May of 2006. (Ex. 12 to Defendants' Motion). Matthews was again rated in 16 categories on a one-to-five, or "unacceptable" to "outstanding" scale. (*Id*.). Plaintiff received one "outstanding" score for "safety awareness," but she was still rated as "unacceptable" for "communication." (*Id*.). Her overall rating was 2.65, or "needs improvement." (*Id*.).

There is some dispute about Plaintiff's response to the 2006 evaluation. Plaintiff acknowledges that she was upset about the evaluation, but she denies that she exhibited any unprofessional behavior. However, from the record, it is clear that on June 6, 2006, Swan filed a "formal complaint" with Assistant Fire Chief Thomas Patterson about Matthews' conduct during a meeting to discuss the evaluation with her. (Ex. 15 to Defendants' Motion). In his complaint, Swan reported that Matthews refused to read the evaluation, and instead threw it on his desk, and accused him of lying and harassing her. (*Id*.). Matthews allegedly made "derogatory" comments for several minutes and then left the office. (*Id*.). Swan complained that "Ms. Matthew's[sic] conduct during this meeting was disrespectful, unprofessional, and in violation of [City] Rules and Regulations." (*Id*.).

Two weeks later, Plaintiff was relieved of duty, purportedly so that the City could investigate Swan's report of her conduct. (Conference Transcript 28:10-15). The same day, Matthews filed a complaint with the Office of Inspector General, in which she claimed that the low performance evaluation was in retaliation for her previous complaints about Swan to the EEOC and other City officials.[1] (Ex. 13 to Defendants' Motion).

On July 21, 2006, one month after she was relieved of duty, Plaintiff filed her second EEOC charge. (Ex. 3 to Defendants' Motion). On that second complaint form, Matthews again marked "Race" and "Retaliation" as the bases for her charges. (*Id.*). She complained specifically that "David Swan . . . gave me a failing evaluation of 2.42, . . . subject[ed] me to a hostile work environment, and on June 6, 2006, he gave me a failing evaluation of 2.65." (*Id.*). Plaintiff claimed that Swan "retaliated against me because I had filed both internal EEO and Office of Inspector General complaints, workers' comp, EEOC charge, and a complaint to City Council Member Adrian Garcia." (*Id.*). Plaintiff noted that "[o]n June 20, 2006, I was relieved of duty with a recommendation for an indefinite suspension by Jack Williams." (*Id.*).

On August 22, 2006, Plaintiff amended her EEOC charge to include "Age" and "Disability" as bases for her complaint. (Ex. 4 to Defendants' Motion). She also filed an attachment to her amended charge in which she explained that it had been "amended to include the issue of indefinite suspension on August 18, 2006, and retaliation in that I believe I was terminated in retaliation for complaining about discrimination." (*Id.*). She alleged further that "Respondent and Assistant Chief Jack Williams refused to accommodate my disability, on May 17, 2006, terminated, and retaliated against me." (*Id.*). Finally, on October 20, 2006, Plaintiff amended her second charge, again, this

---

[1] The Inspector General's office notified Matthews that she should pursue her claim through the City's grievance process, because she had not provided any specific allegation of discrimination that invoked the Inspector General's jurisdiction. (Ex. 14 to Defendants' Motion).

time to include "Sex" as a basis for her complaints. (*Id.*). Plaintiff was issued a right-to-sue letter for her second EEOC charge on February 23, 2007. (Ex. 5 to Defendants' Motion).

The record is clear that Matthews was placed on an "indefinite suspension" on August 18, 2006, less than one month after she filed her second EEOC charge. (Ex. 23 to Defendants' Motion). Under City Civil Service Rule 15, an "indefinite suspension" is, in fact, a termination. (*Id.*; Defendants' Motion p.3 n. 3). The City terminated Matthews allegedly because of the written reprimand she received in 2004, her reported response to the 2006 evaluation, and the two consecutive poor performance evaluations. (Ex. 23 to Defendants' Motion). Plaintiff appealed the termination both through the City's grievance process, and to the Inspector General's Office. (Ex. 25 to Defendants' Motion). Both appeals were unsuccessful. (Ex. 24 to Defendants' Motion; Ex. 26 to Defendants' Motion).

Matthews filed suit in this case, as a pro se plaintiff, on May 24, 2007. (Plaintiff's Original Complaint, Docket Entry #1). She has since amended her complaint five times. In her most recent Complaint, Plaintiff includes claims against the City for race and sex discrimination under 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964; age discrimination under 29 U.S.C. § 621 et seq., the Age Discrimination in Employment Act (ADEA); disability discrimination under 42 U.S.C. § 12101 et seq., the Americans with Disabilities Act (ADA); and Workers' Compensation retaliation under Tex. Lab. Code Ann. § 451.001 et seq. (Plaintiff's Fifth Amended Complaint ["Plaintiff's Complaint"], Docket Entry #35). Defendants have moved for summary judgment on all of her claims.

After reviewing the pleadings and the evidence presented, it is **RECOMMENDED** that Defendants' motion be **GRANTED**. Those Title VII claims that are based on Plaintiff's poor work

evaluations, her 2004 reprimand, her job duties, her exclusion from meetings, and her termination, should be dismissed. Likewise, her hostile environment claim, her ADEA claim based on her job duties, her ADA claim for a failure to accommodate and wrongful termination, her retaliation claim under the Workers' Compensation Act, and all claims against David Swan and Jack Williams should also be dismissed.

**STANDARD OF REVIEW**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *Id.* When the moving party has met its Rule 56 burden, the non-movant cannot survive a motion for summary judgment by resting merely on the allegations in its pleadings. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). If the movant does meet his burden, the non-movant must go beyond the pleadings and designate specific facts to show that there is a genuine issue for trial. *Little*, 37 F.3d at 1075. Further, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts."

*Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 536 (5th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

To meet its burden, the nonmoving party must present "significant probative" evidence indicating that there are issues of fact remaining for trial. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994). If the evidence presented to rebut the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250. (1986). But, in deciding a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 248. However, "Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of poof at trial." *Little*, 37 F.3d at 1075. Conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996). In addition, pleadings filed by a *pro se* litigant are "'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## DISCUSSION

*Claims that are time barred*

Plaintiff claims, first, that the City discriminated against her because of her race and sex, in violation of Title VII. Matthews contends that she was treated differently from other male and non-African American employees, specifically alleging the following: that the City unfairly reprimanded

her; gave her poor performance reviews in 2004 and 2006; assigned her to "demeaning" duties; excluded her from major meetings; and ultimately, terminated her. Matthews also claims that she was subjected to racial and sexual harassment and a "hostile work environment," and that the City retaliated against her for complaining about the discrimination and harassment. Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

As a threshold matter, Title VII requires employees to exhaust their administrative remedies before seeking judicial relief. *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). A claim is "exhausted" if an individual files a timely complaint with the Equal Employment Opportunity Commission, the claim is dismissed by that agency, and the agency informs her of her right to sue in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir.2002).  This allows the EEOC to investigate and, if appropriate, to negotiate a resolution with an employer. *McClain*, 519 F.3d at 273. In states, such as Texas, that have their own administrative procedures, employees have 300 days from the date of an alleged discriminatory act to file their claim with the EEOC. *See Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir.1998). If a plaintiff does not file a claim within that 300 day period, the claim is barred. *Barrow v. New Orleans Steamship Association*, 932 F.2d 473, 476-477 (5th Cir.1991). Once a claim has been presented to the EEOC, and a plaintiff receives a right to sue letter from that agency, the plaintiff has 90 days to file suit on that claim or it is lost. *Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 598 (5th Cir. 2006).

Defendants argue that any allegations arising from Matthews' 2004 reprimand and performance evaluation are time barred, because she did not file suit on those allegations within 90

days after she received a right to sue letter. In her first EEOC charge, dated April 1, 2004, Plaintiff

alleged that she had been "issued poor performance evaluations" and "written reprimands based on

false statements." (Ex. 1 to Defendants' Motion). Plaintiff received her right to sue letter for this

charge on March 24, 2005, yet she did not file suit on these incidents until May 24, 2007. (Ex. 2 to

Defendants' Motion; Plaintiff's Original Complaint). Again, Title VII requires that a plaintiff bring

suit within 90 days after she receives her right-to-sue letter. *Price*, 459 F.3d at 598. Courts strictly

construe this 90 day limitations window. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th

Cir.2002). For example, in *Taylor*, the Fifth Circuit affirmed the dismissal of an action filed only

three days late. *Id.* at 379-380. It is clear that Plaintiff's lawsuit, filed two years after she received

her first right to sue letter, was not brought within the 90 day window required for Title VII claims.

*Price*, 459 F.3d at 598. For that reason, Plaintiff's claims based on the 2004 evaluation and the 2004

reprimand were not timely prosecuted, and both should be dismissed. *Id.*

*Disparate treatment*

Plaintiff claims that, in comparison to male and non-African American employees, she was

treated differently when (1) she was assigned undesirable duties, including working in the

warehouse, (2) she was excluded from major meetings, (3) she received a poor performance

evaluation in 2006, and (4) when she was wrongfully terminated. It is well established that, "[t]o

survive a motion for summary judgment," a plaintiff claiming disparate treatment, based on race or

sex, "must first establish a prima facie case of discrimination by a preponderance of the evidence."

*Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir. 2001) (citing *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792, 802-04 (1973)); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

"A prima facie case may be established by a showing that the plaintiff was a member of an

identifiable [protected class]; that he was qualified for the benefit or promotion he sought; that he was denied these benefits and such denial constitutes an adverse employment decision; and that the adverse employment decision was differentially applied to plaintiff." *Rubinstein v. Administrators of Tulane Educational Fund*, 218 F.3d 392, 399 (5th Cir. 2000) (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981); *Ward v. Bechtel Corp.,* 102 F.3d 199, 202 (5th Cir.1997)). This may be done through "direct evidence of discrimination" or through circumstantial evidence. *Roberson*, 373 F.3d at 651 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1988)); *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 192 (5th Cir. 2001)). A failure of proof on any element of the prima facie case "requires summary judgment against the entirety of the claim." *Munoz v. Orr*, 200 F.3d 291, 307 (5th Cir. 2000). On the other hand, if a claimant can establish a prima facie case, then "an inference of unlawful discrimination" has been raised. *Blow v. City of San Antonio*, 236 F.3d 293, 296-97 (5th Cir. 2001).

The Fifth Circuit has held, repeatedly, that if the plaintiff has shown direct evidence that racial discrimination "was among the motives which prompted the adverse action, the 'burden of proof shifts to the employer to establish by a preponderance of evidence that the same decision would have been made regardless of the forbidden factor.'" *Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (quoting *Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995)); *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). However, if it is circumstantial evidence only that supports the plaintiff's claim, then the burden of production, but not the burden of proof, shifts to the defendant, under the rubric established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Price v. Federal Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002); *Munoz*, 200 F.3d at 299; *Brown v. SCS*

13

*Logic, Inc.*, 82 F.3d 651, 654 (5th Cir. 1996). If that burden-shifting occurs, the defendant must then "articulate a legitimate, nondiscriminatory reason" for the challenged employment practice. *Munoz*, 200 F.3d at 299 (citing *McDonnell Douglas*, 411 U.S. at 802). A defendant may meet this burden by presenting evidence that, "*if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr.*, 509 U.S. at 507 (emphasis original); *and see Price*, 283 F.3d at 720. The burden of persuasion, however, "remains at all times with the plaintiff." *Hicks*, 509 U.S. at 507; *Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Munoz*, 200 F.3d at 299. If the defendant does raise evidence which points to a legitimate business reason for its action, then "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720. But, the Fifth Circuit has held, consistently, that this evidence "must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." *Auguster v. Vermilion Parish School Bd.*, 249 F.3d 400, 403 (5th Cir. 2001); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir.1999). In other words, to defeat a competent motion for summary judgment, the claimant must submit evidence that is sufficient to allow a rational fact finder to conclude that the employer's action was based on discrimination. *Price*, 283 F.3d at 720 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). "[A]lthough the presumption of discrimination drops out of the picture once the defendant" raises a legitimate reason for its action, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and all inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143 (internal quotation marks

omitted).  In fact,

> a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Reeves*, 530 U.S. at 148; *Russell*, 235 F.3d at 223. Whether summary judgment is appropriate, based on such evidence, depends on "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . ."  *Price*, 283 F.3d at 720; *see also Reeves*, 530 U.S. at 148.

    1.    *Plaintiff's 2006 evaluation and termination*

       Defendants contend that Plaintiff's claims for wrongful termination and disparate treatment, based on her 2006 evaluation, both fail, as a matter of law, because she cannot show that another employee was treated differently. Even reading her pleadings liberally, it is true that Plaintiff has not identified another employee who received higher evaluations for similar work, or who retained his job in the face of two poor performance evaluations and repeated allegations of unprofessional conduct. To establish a prima facie case of discrimination in a disparate treatment case, a plaintiff must identify a similarly situated employee who was treated differently. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005). An employee is similarly situated if that employee worked under "nearly identical" circumstances. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir.2001). For example, employees with different disciplinary records are not nearly identical. *See Okoye*, 245 F.3d at 514-15. Here, Matthews has failed to identify a single co-worker who was treated differently with regard to evaluations or terminations. For that reason, Plaintiff has failed to raise a fact issue on an element of her prima facie case, and her claims, based on the 2006 evaluation and her termination, should be dismissed. *Id.*

2. *Demeaning duties, exclusion from meetings*

Plaintiff claims that the City discriminated against her by forcing her to work in the warehouse, by assigning her to demeaning duties, and by excluding her from major meetings. To state a prima facie case of discrimination, Plaintiff must show that each of these alleged actions constituted an "adverse employment decision." *Rubinstein*, 218 F.3d at 399. Only "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating, are considered "adverse employment decisions." *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002). In this circuit, the mere assignment of undesirable duties, or the exclusion of employees from certain meetings, are not considered "ultimate employment decisions." *See Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 554-555 (5th Cir. 1997); *Hamilton v. Texas Dept. of Trans.*, 206 F. Supp.2d 826, 838 (S.D.Tex. 2001). In *Southard*, the plaintiff alleged that she received "less favorable work assignments because of . . . 'animus' toward women," but the Fifth Circuit held that "[u]ndesirable work assignments are not adverse employment actions." *Southard*, 114 F.3d at 554. Similarly, in *Hamilton*, this court held that,

> [s]everal of the employment actions Hamilton alleges are clearly not ultimate employment actions. Work assignments, such as Hamilton's claims that he was overburdened; that he was humiliated by being asked to complete computer graphics; and that he was excluded from meetings and projects, are administrative decisions, not ultimate employment actions.

*Hamilton*, 206 F.Supp. at 838. In light of these holdings, it is clear that Matthews' claims based on purported undesirable duties, and exclusion from meetings, are not "ultimate employment decisions." For that reason, the actions do not constitute "adverse employment decisions," and Matthews has failed to state a prima facie case. Plaintiff's claims, based on those actions, should be dismissed.

*Hostile work environment*

Plaintiff has stated that, while with the City, she was subjected to harassment and a hostile work environment. A racial or sexual hostile environment claim requires evidence that the plaintiff was subjected to "(1) racially [or sexually] discriminatory intimidation, ridicule and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000); *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 655 (5th Cir. 2002). On this record, Plaintiff has not alleged any racially or sexually derogatory comments or actions that would support a prima facie case. *Walker*, 214 F.3d at 625; *Green*, 284 F.3d at 655. For that reason, her claim should be dismissed.

*Plaintiff's Title VII retaliation claim*

Plaintiff claims that the City retaliated against her by issuing her a poor evaluation in 2006, and by terminating her. She contends that the retaliation was based on her complaints to the EEOC, to the Inspector General's Office, and to various other City officials. A retaliation claim, however, is weighed under the same burden shifting framework as one for disparate treatment under Title VII. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). To make a prima facie case of retaliation, an employee must show that (1) she engaged in a protected activity, that (2) an adverse employment action was taken against her, and that (3) a causal link exists between the protected activity and the adverse employment action. *Roberson v. Alltel Info. Servs.*, 373 F3d 647, 655 (5th Cir. 2004). The causal link need not rise to the level of "but for" causation at the prima facie stage. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir.2002). The burden of production, but not the burden of proof, then shifts to the defendant, who must articulate a legitimate, nonretaliatory reason for the

challenged employment practice.  *Munoz*, 200 F.3d at 299 (citing *McDonnell Douglas*, 411 U.S. at

802). The defendant need only present evidence that, "*if believed by the trier of fact*, would support

a finding that unlawful [retaliation] was not the cause of the employment action." *St. Mary's Honor*

*Ctr.*, 509 U.S. at 507 (emphasis original); *and see Price*, 283 F.3d at 720.  The burden of persuasion,

however, "remains at all times with the plaintiff." *Hicks*, 509 U.S. at 507; *Tex. Dept. of Community*

*Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Munoz*, 200 F.3d at 299.

Defendants argue that Plaintiff cannot show that there is a causal link between a protected

activity and her 2006 evaluation. Plaintiff received the evaluation on June 6, 2006, three months after

her most recent complaint to the Inspector General's Office.  (Ex. 12 to Defendants' Motion). The

Supreme Court has noted that "cases that accept mere temporal proximity . . . as sufficient evidence

of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very

close.'" *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001); *Strong v. Univ.*

*Healthcare Sys.*, LLC, 482 F.3d 802, 808 (5th Cir.2007). The Court then cited cases holding that 3

and 4 month periods are insufficient to establish such causal links. *Id*. Here, Plaintiff has offered no

evidence of retaliation other than that her 2006 evaluation was issued three months after her

complaint to the Inspector General's Office. Without more, Plaintiff cannot state a prima facie case

for retaliation based on that evaluation, and her claim should be dismissed. *See Breeden*, 532 U.S.

at 273; *Strong*, 482 F.3d at 808.

Defendants also argue that Plaintiff cannot show a causal link between a protected activity

and her termination. Plaintiff was terminated on August 18, 2006, less than one month after filing

her second EEOC charge. (Ex. 3 to Defendants' Motion; Ex. 23 to Defendants' Motion). Again, at

the prima facie stage, the causal link need not rise to the level of "but for" causation. *Gee*, 289 F.3d

at 345. Given Matthew's status as a pro se plaintiff, and considering the close temporal proximity between her second EEOC charge and her termination, the court is persuaded, on this record, that she has at least raised a fact issue as to whether a causal connection exists.

After an employee establishes a prima facie case, the burden shifts, first, to the employer to offer a legitimate, non-retaliatory reason for the adverse action, and then back to the employee to show that the given reason is merely a pretext for retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). The City has argued that Matthews was terminated because she had two poor evaluations, and demonstrated "outrageous verbal behavior." (Defendants' Motion pp.14-15; Ex. 23 to Defendants' Motion). Both poor performance and inappropriate behavior can constitute legitimate, non-retaliatory reasons for a termination. *See Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). Matthews has not argued, nor presented any evidence to show that those reasons were pretextual. Once the employer articulates a legitimate reason, "the plaintiff must rebut each . . . non-retaliatory reason articulated by the employer." *McCoy*, 492 F.3d at 557. Moreover, unlike Defendants, who bear only the burden of production, Plaintiff bears the burden of persuasion at all times. *Hicks*, 509 U.S. at 507. Because Plaintiff has failed to present any evidence to raise a fact issue on whether Defendants' articulated reasons for her termination were mere pretext, her retaliation claim, based on her termination, should be dismissed.

*Plaintiff's ADEA claim*

Plaintiff claims that the City assigned her to demeaning duties based on her age, in violation of the ADEA. The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29

U.S.C.A. § 623(a)(1). Plaintiff's ADEA claim is analyzed under the same framework as her Title VII claims. *Roberson v. Alltel Information Services*, 373 F.3d 647, 651 (5th Cir. 2004). To make out a prima facie case of discriminatory treatment based on age, a plaintiff is required to prove: (1) she is within the protected class; (2) she is qualified for the position; (3) she suffered an adverse employment decision; and (4) she was replaced by someone younger or treated less favorably than similarly situated younger employees. *Smith v. City of Jackson, Miss.*, 351 F.3d 183 (5th Cir. 2003).

As noted earlier, in the context of a Title VII claim, merely being assigned to undesirable duties does not amount to an "adverse employment decision." *Southard*, 114 F.3d at 555; *Hamilton*, 206 F. Supp.2d at 838. In fact, in *Southard*, the Fifth Circuit explicitly held that "[u]ndesirable work assignments are not adverse employment actions." *Southard*, 114 F.3d at 555. Plaintiff cannot state a prima facie case of age discrimination, based on her reportedly menial duties, because that does not constitute an "adverse employment action." *Id.* For that reason, Plaintiff's ADEA claim should be dismissed.

*Plaintiff's ADA claims*

Matthews complains that the City discriminated against her, in violation of the ADA, when it failed to make accommodations for her sleep apnea, and then terminated her because of that condition. (Deposition 46:15-19; Transcript 27:8-13). The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Plaintiff's claims under the ADA are subject to the same *McDonnell Douglas* burden-shifting framework as her claims under Title VII. *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 762 (5th Cir. 1996). To establish a

prima facie case of disability discrimination, a plaintiff must show that she is a qualified individual with a disability, and that a negative employment action resulted because of that. *Sherrod v. Am. Airlines, Inc*., 132 F.3d 1112, 1119 (5th Cir.1998). A "disability," under the ADA, includes (1) a mental or physical impairment that substantially limits one or more major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. *Sherrod*, 132 F.3d at 1119 (citing 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)). To determine whether an employee has a "mental or physical impairment that substantially limits one or more major life activities" within the meaning of the ADA, courts must determine: (1) whether the employee has an impairment; (2) whether the activity on which employee relies is a major life activity; and, if so, (3) whether employee's impairment substantially limits that major life activity. *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir.2003). "Substantially limits" means that a person is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1); *Sherrod*, 132 F.3d at 1119.

Defendants argue that plaintiff is not "disabled" under the ADA because she cannot show that her sleep apnea substantially limited her ability to work. The ability to work is a "major life activity." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 508 (5th Cir.2003). In this context,

> substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995) (citing 29 C.F.R. § 1630.2(j)(3)(i)). Here, Matthews has not presented evidence, or even an argument, to suggest that her sleep apnea substantially limits "either a class of jobs or a broad range of jobs in various classes." In fact, the record shows clearly that the condition did not substantially limit her job with the City. After the diagnosis in 2002, Matthews continued in her position for the next three and a half years. Moreover, as part of her relief in this case, Plaintiff requests that she be reinstated to a position similar to the one she held in the fire department. (Plaintiff's Complaint ¶29). Finally, the fact that Plaintiff is currently employed as a substitute teacher while she seeks certification to become a full time teacher, argues against a finding that she is substantially limited in the major life activity of working. (Matthews Deposition 68:3-70:3); *See Dupre v. Charter Behavioral Health Systems of Lafayette, Inc.*, 242 F.3d 610, 615 (5th Cir. 2001).

Defendants also contend that, because Plaintiff is not "disabled" under the ADA, her claim that they did not accommodate her impairment fails as a matter of law. The ADA requires employers to "reasonably accommodate" the limitations of their disabled employees. *Gammage v. West Jasper School Bd. of Educ.*, 179 F.3d 952, 954 (5th Cir. 1999). To maintain a failure to accommodate claim, the plaintiff must show that she actually had a disability, not merely that she was regarded as having one. *Newberry v. East Texas State University*, 161 F.3d 276, 280 (5th Cir. 1998). "[A]n employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment." *Id*. Again, Matthews has not argued, nor presented any evidence to suggest, that her sleep apnea substantially limited a major life activity. For that reason, Plaintiff's claim for failure to accommodate should be dismissed.

Finally, Defendants contend that Plaintiff's wrongful termination claim fails, as a matter of law. The City argues that even if Plaintiff could show that she was "disabled" under the ADA, it has offered a legitimate reason for her termination, and there is no evidence of pretext. Matthews was purportedly relieved of duty to investigate Swan's complaint about her conduct during the meeting to discuss her 2006 evaluation. (Conference Transcript 28:10-15). The City also alleges that Matthews was ultimately terminated, not because of her disability, but because she had two poor evaluations, and demonstrated "outrageous verbal behavior." (Defendants' Motion pp.14-15). Matthews has not argued, nor presented evidence to show that those reasons were merely pretexts for disability discrimination. Because Plaintiff has failed to raise a genuine issue of fact on whether Defendants' articulated reason for her termination was mere pretext, her ADA claim based on her termination should be dismissed.

*Plaintiff's Workers' Compensation claim*

Plaintiff claims that Defendants retaliated against her for filing a workers compensation claim. She alleges that this retaliation occurred when Swan reported that she did not provide timely notice of her injury, and when she was terminated. (Matthews Deposition 53:23-25). Under § 451.001 of the Texas Labor Code, "[a] person may not discharge or in any other manner discriminate against an employee because the employee has: (1) filed a workers' compensation claim in good faith." Tex. Lab.Code Ann. § 451.001. "The employee has the burden of demonstrating a causal link between the discharge or discrimination and the filing of a workers' compensation claim." *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex.App.-Dallas 2004, no pet.) (citing Tex. Lab.Code Ann. § 451.002(c)). "A causal connection is established between a plaintiff's protected action and a defendant's retaliation if, but for the employee's action, the adverse employment action

would not have occurred when it did." *Id*. (citing *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450-51 (Tex.1996)). The employer may then rebut the claim of retaliation by showing that there was a legitimate, non-retaliatory reason for its action. *Swearingen v. Owens-Corning Fiberglas Corp.*, 968 F.2d 559, 563 (5th Cir.1992).

Defendants argue that Plaintiff cannot show a causal connection between her workers' compensation claim and her termination. Plaintiff filed her workers' compensation claim on May 8, 2003, and she was terminated on August 18, 2006. (Matthews Deposition 51:22-52:4; Ex. 23 to Defendants' Motion). Plaintiff has offered no evidence to show a causal link between her workers' compensation claim, and her termination three years later. For that reason, her workers' compensation retaliation claim based on her termination should be dismissed.

Defendants also argue that there was a legitimate reason for Swan to report that Matthews filed an untimely notice of injury. The undisputed evidence shows that Plaintiff filed a "First Report of Injury" form on August 11, 2003. (Ex. C to Defendants' Motion: Affidavit of David Swan). On that form, she identified May 8, 2003, as the "Date of Injury." (*Id*.). Plaintiff has presented no other evidence to show that she notified the City of her injury at any time before filing this report. Under Texas workers' compensation law, an employee must notify her employer within thirty days of any injury. Tex. Lab.Code Ann. § 409.001. Defendants' argue that, because Plaintiff failed to report her injury within 30 days, Swan's accurate statement to that effect was legitimate, and not based on any retaliatory motive. Matthews has not presented evidence to suggest that her notice was timely, or to otherwise show that Swan's alleged report was pretext for retaliation. Because Defendants have articulated a legitimate, non-retaliatory reason for Swan's report, and there is no evidence of pretext, Plaintiffs workers' compensation retaliation claim based on that report should be dismissed.

**CONCLUSION**

After reviewing the pleadings and the evidence presented, it is **RECOMMENDED** that Defendants' motion be **GRANTED**. Those Title VII claims that are based on Plaintiff's poor work evaluations, her 2004 reprimand, her job duties, her exclusion from meetings, and her termination, should be dismissed. Likewise, her hostile environment claim, her ADEA claim based on her job duties, her ADA claim for a failure to accommodate and wrongful termination, her retaliation claim under the Workers' Compensation Act, and all claims against David Swan and Jack Williams should also be dismissed.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have ten business days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 02-13, S.D. Texas.  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

SIGNED at Houston, Texas, this 18th day of February, 2009.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**